ESTHER PRADO MARTORELL, demandante y apelada, *v.* FRANCISCO QUIÑONES, ESCAMBRÓN BEACH CLUB HOTEL CORP., ESCAMBRÓN DEVELOPMENT CO., y UNITED STATES CASUALTY CO., demandados y apelantes.

Número 10421.

*Sometido:* 10 de enero de 1952. *Resuelto:* 11 de mayo de 1955.

*R. Rivera Zayas, G. Rivera Cestero, Milton F. Rúa, Emilio de Aldrey* y *Francis & Ydrach,* abogados de los apelantes; *Charles H. Hartzell, Rafael O. Fernández, José L. Novas* y *P. Juvenal Rosa,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

Después de dictada sentencia a su favor y apelada la misma por los demandados, la demandante solicitó y obtuvo del tribunal sentenciador una orden para que se embargaran bienes de aquéllos hasta cubrir el monto de la sentencia, $23,966, más $2,200 para intereses y costas. Este aseguramiento se obtuvo, conforme a la ley, sin prestación de fianza.

En virtud de la mencionada orden, el márshal de aquel tribunal embargó la suma de $17,914.59[1] que los demandados The Escambrón Development Company, Inc., Francisco Quiñones y Escambrón Beach Club & Hotel Corporation tenían en sus respectivas cuentas corrientes en el Banco Crédito y Ahorro Ponceño, Sucursal de San Juan.

A The Escambrón Development Company, Inc., también se le embargaron dos solares radicados en el barrio Puerta de Tierra, de San Juan, sobre uno de los cuales está construído un edificio conocido como Hotel Normandie.[2]

Francisco Quiñones, Escambrón Beach Club & Hotel Corporation y United States Casualty Company, solicitaron la anulación del embargo fundándose en que éste había sido efec-

[1] Dicha suma se descompone en tres partidas, correspondiendo $2,330.07 a The Escambrón Development Co., Inc., $5,016.88 a Francisco Quiñones y $10,567.64 a Escambrón Beach Club & Hotel Corporation.

[2] Debido a que dicha propiedad respondía adecuadamente de la obligación, esta codemandada solicitó, y sin la oposición de la demandante obtuvo, el levantamiento del embargo sobre los $2,330.07 de su cuenta corriente en el Banco Crédito y Ahorro Ponceño, Sucursal de San Juan.

tuado en violación de lo dispuesto en el art. 10 de la Ley para Asegurar la Efectividad de las Sentencias, del 1ro. de marzo de 1902. En la alternativa, solicitaron la reducción de su cuantía, sosteniendo, en síntesis, que tratándose de una sentencia solidaria, la misma podía ser ejecutada contra cualquiera de las partes demandadas; que habiendo otros demandados que también respondían de la totalidad de la sentencia, era injusto que se sometiera a Escambrón Beach Club & Hotel Corporation "al rigor de todo el embargo"; que la codemandada United States Casualty Company, "para hacer negocios en la isla de Puerto Rico y garantizar el pago de las sentencias que en su contra puedan recaer, ha prestado suficiente garantía a El Pueblo de Puerto Rico y a la demandante, con arreglo a lo que dispone la Ley de Seguros de Puerto Rico", y que, en todo caso, el monto del embargo debía reducirse "porque Escambrón Beach Club & Hotel Corporation sólo tiene, como dinero efectivo para atender a sus obligaciones de pagos de salarios y mantenimiento de su negocio, las cantidades embargádasle." Después de una vista, la anterior solicitud fué denegada, habiéndose establecido contra dicha denegatoria el presente recurso de apelación.

Las apelantes imputan al tribunal a quo la comisión de cuatro errores, a saber: (1) declarar sin lugar su moción sobre anulación de embargo o reducción del mismo, a pesar de que "en contravención de lo dispuesto por el art. 10 de la Ley para Asegurar la Efectividad de Sentencias, aprobada en 1 de marzo de 1902, no se depositaron los bienes de que se trata en poder del tribunal o de la persona designada por éste bajo la responsabilidad del demandante"; (2) declarar sin lugar la referida moción a pesar del hecho de que se embargaron bienes de la codemandada The Escambrón Development Company, Inc., deudora solidaria por sentencia, por la suma de $26,166.00; (3) "negarse a reducir el embargo trabado sobre los fondos de los codemandados Francisco Quiñones y Escambrón Beach Club & Hotel Corporation, a pesar del hecho de que la codemandada United States Casualty Company asegura el

pago de la cantidad de $10,000 de principal, $4,000 de honorarios de abogado y $200 supuestamente incurridos de costas y $2,000 supuestamente incurridos o a incurrirse por concepto de intereses, y tener los codemandados Francisco Quiñones y Escambrón Beach Club & Hotel Corporation necesidad de los fondos embargados" y (4) negarse a anular el embargo en cuanto a cualquiera de los codemandados Francisco Quiñones y Escambrón Beach Club & Hotel Corporation o ambos, a pesar del hecho de que la sentencia, la moción de aseguramiento, la orden y el mandamiento de embargo son vagos, imprecisos y equívocos por el motivo de estar dirigidos a Francisco Quiñones y/o Escambrón Beach Club & Hotel Corporation y no contra cada uno de ellos individualmente, por la suma total.

No hay controversia con relación a la forma en que se efectuó el embargo. El mismo fué trabado mediante requerimiento que le hiciera el Márshal del Tribunal de Distrito al Gerente del Banco Crédito y Ahorro Ponceño, Sucursal de San Juan, para que le entregara el balance que tuvieran en sus cuentas los codemandados Francisco Quiñones, Escambrón Beach Club & Hotel Corporation, The Escambrón Development Company, Inc., y United States Casualty Company, o cualquiera de ellos, hasta la suma de $26,166. Dicho banco expidió tres cheques a favor del Márshal por las cantidades correspondientes a los depósitos de cada uno de los codemandados Quiñones, Escambrón Beach Club & Hotel Corporation y The Escambrón Development Company, Inc. Los tres cheques fueron depositados en la cuenta oficial del Márshal en el mismo banco Crédito y Ahorro Ponceño.

Sostienen los recurrentes que "dentro de esta situación aparece claro, por los documentos del diligenciamiento de dicha orden de embargo y por la declaración del Márshal De Armas, que se han violentado los preceptos del art. 10 de la Ley para Asegurar la Efectividad de las Sentencias, ya que el Márshal De Armas, sin autoridad alguna, ha depositado dichos bienes en el Banco Crédito y Ahorro Ponceño, sin estar

los mismos en poder del tribunal ni haber el tribunal designado a dicho Banco como depositario de los referidos bienes." Sostienen además que "en realidad de verdad lo que pretendió hacer la demandante y no lo hizo era un secuestro de bienes en poder de un tercero (*garnishment*)"; que para que pueda trabarse un embargo de esa naturaleza "lo que procede no es la supuesta transmisión de créditos personales propiedad del deudor a un márshal para luego hacerse un depósito bancario, por no cumplir eso con la ley, sino la correspondiente prohibición de enajenar dirigida al tenedor de los bienes (*garnishee*)" y que no habiéndose observado el procedimiento correcto, el embargo trabado carece de validez.   Veamos.

El art. 10 de la Ley para Asegurar la Efectividad de las Sentencias—a la cual nos referiremos como la Ley—dispone, en su parte aquí pertinente, que:

"La prohibición de enajenar bienes muebles *y el embargo de los mismos* se practicarán *depositando los bienes de que se trate en poder del Tribunal* o de la persona designada por éste bajo la responsabilidad del demandante . . ."   (Bastardillas nuestras.)

Por la orden de embargo se instruyó al Márshal en este caso para que embargara "bienes de los demandados Francisco Quiñones y/o Escambrón Beach Club & Hotel Corporation y The Escambrón Development Company o de cualquiera de ellos en cantidad suficiente" para cubrir el importe de la sentencia dictada más costas e intereses.   Dada la naturaleza del depósito bancario, *Portilla* v. *Banco Popular*, 75 D.P.R. 100, el derecho de crédito de cada uno de los apelantes contra el depositario, en el monto de sus cuentas corrientes, fué embargado por el Márshal, pasando en cada caso a ser, en virtud de dicho embargo y del subsiguiente depósito por el Márshal en su cuenta oficial, un derecho de crédito bajo la autoridad de un oficial del tribunal y, desde ese instante, en *custodia legis*.   *Union Indemnity Co.* v. *Florida Bank & Trust Co.*, 48 F.2d 595, 597.   Tratándose de fondos, el Márshal venía obligado, bajo la sec. primera de la Ley de 12 de marzo de

1908 (³)—pág. 123 de las Leyes de dicho año—a depositar los mismos en la institución bancaria seleccionada por el juez a esos efectos. (⁴)   Los casos de *Balaguer* v. *Cordovés, Juez,* 59 D.P.R. 648; *Dávila* v. *Rosa,* 61 D.P.R. 608; *Cooperativa Central* v. *Flores,* 68 D.P.R. 726 citados por los apelantes, no son de aplicación al de autos, pues aquí el Márshal —en su carácter de oficial del tribunal—tomó posesión de los bienes embargados, y procedió a depositarlos en la institución bancaria seleccionada de acuerdo con la ley.

█ Aun cuando aquí se embargaron bienes muebles en manos de una tercera persona, (⁵) nada hay en la ley que impida tal embargo, ni que distinga entre la forma de llevarse a cabo el embargo de bienes que están en manos del demandado y el de bienes que están en manos de terceras personas.   En el estado de nuestro derecho, pueden ser objeto de embargo "los bienes pertenecientes al demandado en el momento del embargo o los que existan en poder de una tercera persona, que sean de su propiedad." *Sierra* v. *Vieta,* 56 D.P.R. 224, 232.   Depósitos en bancos están sujetos a embargo.   *Savings Bank of Danbury* v. *Loewe,* 242 U. S. 357, 61 L. Ed. 360.   La escasa jurisprudencia de este Tribunal ha intentado seguir la diferencia entre "un embargo en el sentido ordinario de la palabra" y "un secuestro de bienes en poder de un tercero (*garnishment*)", *Armour Fertilizer Works* v. *Ramírez,* 52 D.P.R. 537, 539—Véase también *Lamboglia* v. *La Junta Escolar de Guayama,* 15 D.P.R. 318, 324—pero bajo

---

(³) Dicha sección lee así:

"Sección 1.   Será obligación del Secretario y Márshal de cada una de las Cortes de Distrito de la Isla depositar en alguna institución bancaria designada por el respectivo Juez, todos los fondos que percibiera oficialmente, bien como costas o derechos, o en virtud de alguna ley, ejecución o venta de propiedades por orden del tribunal, o en cualquiera otra forma."

(⁴) Habiendo el Márshal hecho el depósito en su cuenta oficial, en el propio banco Crédito y Ahorro Ponceño, es obvio que éste era el depositario seleccionado de acuerdo a la referida ley.

(⁵) En jurisdicciones americanas el procedimiento de embargo (*attachment*) y el de secuestro de bienes en poder de un tercero (*garnishment*), por ser en derogación del derecho común, existen sólo en virtud de estatutos. Véanse 86 A.L.R. 588; 115 A.L.R. 593.

los hechos de este caso, es innecesario ahora su reexamen. No existe, pues el primer error señalado.

▪ Tampoco los imputados en los señalamientos segundo y tercero, de los cuales dispondremos simultáneamente. No tenían derecho los apelantes a que se dejara sin efecto el embargo trabado sobre sus cuentas corrientes por el mero hecho de que a la codemandada The Escambrón Development Company, Inc., se le hubiera embargado propiedad por valor de $26,166. En un caso de la naturaleza del presente en el cual dos de los demandados—arrendador y arrendatario—se imputaron el uno al otro la total responsabilidad de los daños sufridos por la demandante—habiendo ambos apelado de la sentencia que les hizo solidariamente responsables—prudente era que la demandante asegurara la efectividad de dicha sentencia embargando bienes de ambos. De resultar uno de ellos el único responsable, si en cuanto a él no se hubiera asegurado la efectividad de la sentencia, la demandante hubiera estado desprovista de un medio efectivo para ejecutarla.

▪ De otro lado, el hecho de que la United States Casualty Company—codeudora, según la sentencia dictada por el tribunal inferior—tenga invertida en bonos de El Pueblo de Puerto Rico la cantidad de $200,000 y que dicha suma se utilice para garantizar el cumplimiento de las obligaciones en que incurra dicha compañía al hacer negocios en la isla, no impide que la demandante embargue bienes de otros codeudores. El que uno de éstos sea económicamente solvente no afecta el derecho de un demandante a embargar bienes de otro codeudor. *Richardson* v. *Probst*, 72 N.W. 521; *Maxwell* v. *Gunn*, 4 La. Reports 143; 7 C.J.S., *Attachment*, sec. 22 (b). El embargo persigue asegurar la efectividad de la sentencia dictada a través de la preferencia que se adquiere sobre los bienes embargados, y no es sustituto adecuado de la ventaja que envuelve esa preferencia el que una de las condeudoras haya garantizado, mediante inversión en bonos de El Pueblo de Puerto Rico, el pago de sus obligaciones. Aún si esa garantía prestada por la United States Casualty Company

fuera equivalente a la seguridad que ofrece un embargo, la demandante no venía obligada a limitarse a esos bienes, pudiendo ir contra sus otros deudores. *National City Bank* v. *Corte*, 47 D.P.R. 128.

■ Tampoco es razón suficiente para reducir un embargo la circunstancia de "tener los codemandados Francisco Quiñones y Escambrón Beach Club & Hotel Corporation necesidad de los fondos embargados." Si bien el tribunal sentenciador encontró probado que "es un hecho cierto que el embargo trabado sobre los bienes de estos demandados les causa serios trastornos e inconvenientes en sus negocios", también es cierto que en sus conclusiones estableció que Escambrón Beach Club & Hotel Corporation "no posee otros bienes que los dineros embargados y el mobiliario que usa en el negocio." Los casos de *National City Bank of New York* v. *De la Torre*, 45 D.P.R. 626 y *Paz* v. *Bonet*, 31 D.P.R. 68, citados por los apelantes, son claramente distinguibles del de autos. En el primero, el demandante embargó a uno de los demandados bienes en exceso de su obligación solidaria con otro codemandado. El demandado cuyos bienes se embargaron solicitó y obtuvo que el embargo se limitara exclusivamente a propiedad suficiente para garantizar la reclamación del demandante. En el caso de autos, como hemos visto, los únicos bienes embargados a la demandada Escambrón Beach Club & Hotel Corporation—además del mobiliario y equipo usado en la explotación del negocio—fueron sus depósitos en el banco. En el segundo de dichos casos—*Paz* v. *Bonet*—estaba envuelta la sustitución de un inmueble embargado por la fianza que autoriza el art. 15 de la ley. No es, por lo tanto, aplicable al de autos.

■ El cuarto señalamiento de error se relaciona con el uso de la expresión *y/o* tanto en la sentencia y en la moción para asegurar su efectividad, como en la orden y en el mandamiento de embargo. Se sostiene que éstos "son vagos, imprecisos y equívocos por motivos de estar dirigidos a Francisco Quiñones y/o Escambrón Beach Club Hotel & Hotel Corporation y no contra cada uno de ellos individualmente por la suma total"

322

de la sentencia, en su caso, y de la totalidad de la suma embargada, según la orden y el mandamiento de embargo.

La sentencia en el caso de daños y perjuicios condena a los codemandados, ([6]) Francisco Quiñones *y/o* Escambrón Beach Club & Hotel Corporation, mancomunada (sic) y solidariamente a pagar a la demandante la suma de $23,966 más las costas.

La moción de aseguramiento solicitó se dictara una orden "para que se embarguen bienes a los demandados Francisco Quiñones y/o Escambrón Beach Club Corporation, The Escambrón Development Company o de cualquiera de ellos . . ." En igual forma están fraseadas la orden y el mandamiento de embargo. Independientemente de la imprecisión que en algunos casos la expresión y/o pueda conllevar, en el de autos no existe motivo para invocarla. Y menos para que produzca la nulidad del embargo trabado.

*Debe confirmarse la resolución apelada.*

El Juez Asociado Señor Pérez Pimentel no intervino.

---

([6]) En unión a The Escambrón Development Company, Inc., y United States Casualty Co.