Amarlite Architectural Products, Inc., and Marvins, Inc., appeal from a judgment in favor of United States Fidelity 
Guaranty Company ("USF G"), in the amount of $21,748.66. The trial judge ruled, following an ore tenus hearing, that deposits made into an AmSouth Bank account by Copeland Glass Company, Inc., had been deposited into a "special account" and, therefore, were not subject to garnishment by Amarlite and Marvins, and he further ruled that the funds deposited in the account in question were the property of USF G.
In 1990, Amarlite and Marvins, Inc., obtained separate judgments against Copeland Glass. On October 19, 1990, writs of garnishment were issued to AmSouth Bank *Page 415 
regarding both of the judgments.[1] AmSouth thereafter paid $21,748.66 from a Copeland account into the court for a determination of ownership of the funds in question. Copeland subsequently objected to the garnishment of the funds in the AmSouth account because, it argued, the funds had been deposited into a "special account" and, therefore, were not subject to garnishment.
The evidence before the trial court was that Copeland Glass attempted to set up the alleged "special account" pursuant to its agreement with USF G, its surety on certain bonded construction projects. The contract between USF G and Copeland Glass stated that USF G could require Copeland to deposit sums received, pursuant to work done on certain bonded projects, into a special account for USF G. Upon learning of the financial difficulties of Copeland Glass, and upon further learning of an impending payment owed to Copeland Glass on one of its bonded projects, USF G wrote to Copeland Glass and stated that it was requiring Copeland Glass to set up a special account for the deposit of the funds. In an attempt to comply with the contract requirements, Copeland Glass set up an account with AmSouth, separate from its regular account there. The title of the account was "Copeland Glass Company, Inc. USF G," and signatures of a representative from Copeland Glass Company and a representative from USF G were required to withdraw funds therefrom.
The president of Copeland Glass testified that when he went to set up the account he informed a representative of AmSouth, Ms. Hathcock, that the account was to be a special account. No testimony was taken from AmSouth Bank as to whether Copeland Glass informed AmSouth, at least in part, of the nature of the account.
Amarlite and Marvins, Inc., contend that, within the meaning of § 5-1A-9, Code of Alabama 1975, the deposit made by Copeland Glass constituted a "general deposit" instead of a "special deposit." That section states:
 "A deposit to a bank or other financial institution permitted by law to take deposits from the general public ('depository institution') creates the relationship of debtor and creditor between the depositor and the depository institution. All such deposits are general deposits unless there is a written agreement between the depositor and the depository institution which provides therein that the deposit is to be paid only to a particular identified or identifiable person or that the deposit is made and payable only for a specific and particular purpose. This section shall not affect accounts labeled 'escrow' or 'trust.' "
They argue, because there was no written agreement betweenAmSouth and Copeland Glass as to the nature of the account, that the deposit constituted a general deposit and, therefore, is subject to garnishment. Because we find that the account was not subject to garnishment for other reasons, we pretermit discussion of whether the account was "general" or "special."
The trial court found that the deposits made into the account in question were the property of USF G. Because the account was in the name of "Copeland Glass Co., Inc. USF G," and because the account required signatures of representatives of both Copeland Glass and USF G for withdrawals, the nature of the account was that of a joint account. Different jurisdictions have considered the extent of garnishment allowed regarding funds held in a joint account where only one of the joint account holders is a debtor to the creditor in question. See Annot., 11 A.L.R.3d 1465 (1967). Some jurisdictions allow garnishment of the entire amount in the account in question, placing on the depositors the burden of proving that garnishment of the full amount is not proper; see Hayden v.Gardner, 238 Ark. 351, 381 S.W.2d 752 (1964). Other jurisdictions presume that the depositors own the account equally and hold that the burden to prove *Page 416 
otherwise rests with the party contradicting that presumption. See Purma v. Stark, 224 Kan. 642, 585 P.2d 991 (1978).
We conclude that joint accounts are garnishable to the extent of the ownership of the debtor. See Annot., 11 A.L.R.3d 1465. Furthermore, we agree with the holding in Hayden, supra, that there is a rebuttable presumption that the funds in the joint account belong to the debtor. The burden is on the depositors to prove otherwise. See Hayden, 238 Ark. at 354,381 S.W.2d at 754. We consider this to be the most equitable solution, because it is much easier for the depositors than the creditor to have or obtain proof of the ownership of the commingled funds.
In the present case, therefore, the burden was on USF G to prove that the funds in the joint account with Copeland Glass actually were the property of USF G. USF G offered evidence that, pursuant to the contract between USF G and Copeland Glass, USF G had demanded that Copeland set up the account for the benefit of USF G. According to the testimony, Copeland Glass attempted to comply with this demand by setting up the account in question, separate from its other AmSouth account. Only funds from the bonded project were placed in the account, and the signatures of representatives of Copeland Glass and USF G were required for withdrawals from the account. We find, therefore, that the trial judge, who heard the evidence in this nonjury case, did not err in determining that the funds were, indeed, the property of USF G.
AFFIRMED.
MADDOX, ALMON, STEAGALL and INGRAM, JJ., concur.
[1] The writs of garnishment were given to AmSouth Bank simultaneously. Amarlite and Marvins, Inc., have agreed to split the proceeds from the account equally in the event this Court determines that the account was subject to garnishment.