EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Banco Bilbao Vizcaya<br><br>Recurrido<br><br>v.<br><br>Ángel R. López Montes;<br>Carmen Sasso Oliver, por sí<br>Y en representación de la<br>Sociedad Legal de Gananciales<br>compuesta por ambos; Benedict<br>School, Inc.<br><br>Peticionarios | Certiorari<br><br>2006 TSPR 135<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-2005-573

Fecha: 25 de agosto de 2006

Tribunal de Apelaciones:

       Región Judicial de Aguadilla

Juez Ponente:

       Hon. Jorge L. Escribano Medina

Abogado de la Parte Peticionaria:

       Lcdo. Edgar Méndez Rivera

Abogados de la Parte Recurrida:

       Lcdo. Alberto De Diego Collar
       Lcda. Tania Y. Salas De Jesús

Materia: Cobro de Dinero, Ejecución de Hipoteca

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Bilbao Vizcaya

    Recurrido

        v.

Ángel R. López Montes;           CC-2005-573
Carmen Sasso Oliver, por sí
y en representación de la
Sociedad Legal de Gananciales
compuesta por ambos; Benedict
School, Inc.

    Peticionarios


Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez


San Juan, Puerto Rico a 25 de agosto de 2006

Nos corresponde resolver si un acreedor puede embargar, como medida cautelar para asegurar la efectividad de una sentencia, una cuenta bancaria conjunta cuyos titulares son su deudor y un tercero ajeno a la relación contractual entre deudor y acreedor.

## I

La controversia ante nuestra consideración tiene su origen en un pleito sobre cobro de dinero y ejecución de hipoteca por la vía ordinaria, presentado por el Banco Bilbao Vizcaya (en adelante"BBV") ante el Tribunal de Primera

Instancia, Sala Superior de Aguadilla, en contra del Sr. Ángel López Montes, la Sra. Carmen Sasso Oliver, la sociedad legal de gananciales compuesta por ambos y Benedict School, Inc. (en adelante "los peticionarios" o "la parte demandada-peticionaria"). Pocos días después de haber incoado la demanda, el BBV presentó sendas mociones sobre embargo de bienes inmuebles y muebles para asegurar la efectividad de la sentencia. En lo pertinente, se interesaba el embargo de "[d]ineros depositados por la parte demandada en Bancos en Puerto Rico en cuentas identificadas como cuentas de ahorro y/o certificados de depósitos y/o IRAS y/o cuentas de cheques y/o cualquier otra cuenta bancaria a nombre de los demandados."[1] El tribunal autorizó el embargo de bienes muebles de la parte demandada-peticionaria, incluyendo aquéllos en posesión de un tercero, hasta la cantidad de $280,000.00.

Expedido el correspondiente mandamiento, el BBV procedió a embargar la cantidad de $15,631.12 depositados en la cuenta de ahorros núm. 515-045442 del Banco Popular de Puerto Rico (en adelante "Banco Popular"), la cual estaba a nombre de la Sra. Concepción Oliver Aneiro y la peticionaria, Sra. Carmen Sasso Oliver.

Así las cosas, el 25 de mayo de 1995 la señora Oliver Aneiro, madre de la codemanda Sasso Oliver y tercera ajena a

---

[1] Véase Moción solicitando orden de embargo y retención de bienes muebles en poder del demandado y/o terceros en aseguramiento de efectividad de sentencia presentada el 7 de marzo de 1995 por el demandante-recurrido Banco Bilbao Vizcaya, apéndice del recurso de *certiorari*, pág. 37.

la relación contractual entre el BBV y los peticionarios, presentó una moción de intervención para impugnar la validez del embargo sobre la cuenta conjunta. Alegó, que a pesar de que el nombre de la señora Sasso Oliver aparecía en la cuenta embargada, la totalidad del dinero depositado le pertenecía. Expresó además que poseía evidencia fehaciente demostrativa de su titularidad. Por tal razón, solicitó que se le permitiera intervenir en el caso y se le devolviera el dinero embargado.

Luego de varios trámites procesales, el Tribunal de Primera Instancia dictó sentencia en rebeldía el 23 de febrero de 1996, mediante la cual reconoció una deuda a favor del BBV, ascendente a $1,022,797.63 de principal, más intereses y una suma pactada en concepto de gastos, costas y honorarios de abogado. El tribunal nada expresó sobre el asunto de la procedencia del embargo realizado a la cuenta bancaria de las señoras Oliver Aneiro y Sasso Oliver.

Según surge del expediente, el BBV solicitó la reapertura del caso el 9 de marzo de 2001 por lo que el tribunal de instancia le concedió un término a los peticionarios para expresarse sobre lo solicitado. Concluido el término sin la comparecencia de la parte demandada-peticionaria, el BBV requirió se celebrara una vista evidenciaria para que el tribunal determinase si éste tenía derecho "a ejecutar la Sentencia dictada en este caso mediante el cobro de un dinero embargado por la cantidad de $15,631.12 ó, si de lo contrario, este dinero no puede ser

ejecutado ya que pertenece a la interventora, Doña Concepción Oliver Aneiro, según su alegación vertida el pasado 25 de mayo de 1995 mediante Moción de Intervención por embargo ilegal."[2]

Celebrada una vista a la cual sí compareció la parte demandada y, toda vez que las partes no pudieron llegar a un acuerdo sobre la controversia pendiente, el tribunal resolvió que le correspondía a la parte interventora, señora Oliver Aneiro, derrotar la presunción de que el dinero de la cuenta embargada era solidario. Véase Minuta de 9 de septiembre de 2002, apéndice del recurso de *certiorari*, pág. 68. Posteriormente, las partes sometieron sus correspondientes memorandos fijando sus respectivas posiciones sobre este asunto. Los peticionarios arguyeron ante el foro primario que el contrato de cuenta de ahorros suscrito entre el Banco Popular y las señoras Oliver Aneiro y Sasso Oliver, era uno de depósito por lo que se presumía que la relación existente era una de mancomunidad de bienes y no de solidaridad. Debido a ello, entendió improcedente el embargo de la totalidad del dinero depositado en la cuenta número 515-045442 del Banco Popular. Se explicó además, que el dinero embargado fue depositado en su totalidad antes de la inclusión de la señora Sasso Oliver como co-firmante en dicha cuenta. Por tal razón, si existiese alguna relación de solidaridad entre las co-propietarias de la referida cuenta

---

[2] Véase Moción solicitando vista sobre dinero embargado presentada por el Banco Bilbao Vizcaya, apéndice del recurso de *certiorari*, pág. 63.

bancaria, la misma comenzó desde la fecha en que se añadió la segunda persona.

Por su parte, el BBV adujo que el contrato existente entre el Banco Popular y las depositantes era uno de préstamo y no de depósito. Se indicó que en éste se consignó la solidaridad de ambas en cuanto a los fondos depositados en la cuenta. El contrato en cuestión dispone que "los fondos depositados son propiedad de ambos depositantes, quienes se convierten en acreedores solidarios del Banco".[3] Siendo ello así, correspondía a las señoras Sasso Oliver y Oliver Aneiro el peso de demostrar si parte o todo el dinero depositado pertenecía a alguna de ellas exclusivamente. Finalmente, el BBV presentó prueba a los efectos de que la firma de la codemandada Sasso Oliver fue incorporada a la cuenta del Banco Popular el 3 de mayo de 1994, es decir, antes de la fecha en que se concretó el embargo en controversia.

Trabada así la controversia y a instancias de los peticionarios, el tribunal emitió orden dirigida al Banco Popular para que produjera los estados de cuenta desde la apertura de la cuenta de ahorros hasta abril de 1995, a los fines de aclarar la cantidad que en efecto aparecía depositada en la cuenta 515-045442 mientras la señora Oliver Aneiro era la única titular de la referida cuenta bancaria. En cumplimiento con dicha orden, el Banco Popular certificó que la aludida cuenta fue abierta el 28 de septiembre de 1993 por la Sra. Concepción Oliver Aneiro y explicó que no posee

---

[3] Véase Oposición a Memorando de Derecho, apéndice del recurso de *certiorari*, pág. 155.

los estados de cuenta solicitados ya que el periodo de retención de información requerido por ley es de siete años.

Eventualmente se celebró la vista evidenciaria para dilucidar esta controversia. Atendida la prueba testifical y documental presentada, el Tribunal de Primera Instancia concluyó, como cuestión de hecho, que los fondos embargados ascendentes a $15,631.12 estaban depositados en la cuenta de ahorros del Banco Popular antes que fuera añadida la firma de la Sra. Carmen Sasso Oliver. No le mereció credibilidad un documento presentado por el BBV para impugnar la fecha en que fue incluida la segunda firmante en la cuenta. Es decir, para el foro de primera instancia el hecho de que al momento del embargo de la cuenta de ahorros, ésta estuviera a nombre de Oliver Aneiro exclusivamente, bastaba para adjudicarle a ésta la totalidad de los fondos depositados. Además, resolvió que madre e hija no eran deudoras solidarias, toda vez que la señora Oliver Aneiro no contrató con el BBV ni tampoco suscribió con su hija,[4] un documento en el que se obligara solidariamente con ésta al pago de la deuda contraída por los peticionarios con el BBV. Concluyó entonces que era improcedente el embargo y ordenó la devolución de la totalidad del dinero secuestrado por el BBV, más el pago de intereses legales, las costas del litigio y honorarios de abogado.

---

[4] La parte interventora falleció el 1 de diciembre de 2003, por lo que el albacea testamentario nombró a la codemandada Sasso Oliver para que representara a la sucesión en este pleito. Véase apéndice del recurso de *certiorari*, pág. 73-74.

Inconforme, el BBV acudió al Tribunal de Apelaciones y, en lo pertinente, indicó que había errado el tribunal de instancia al resolver que la cuenta embargada pertenecía exclusivamente a la señora Oliver Aneiro. Al revocar el dictamen del foro sentenciador, el foro apelativo intermedio determinó que de los documentos ante su consideración se desprendía que con anterioridad al embargo la cuenta bancaria en controversia estaba a nombre de las señoras Oliver Aneiro y Sasso Oliver. A base de ese hecho exclusivamente validó el embargo y revocó al foro primario.

En desacuerdo, la parte demandada-peticionaria acudió ante este Tribunal y señaló los siguientes errores:

> Erró el Tribunal de Apelaciones al revocar la sentencia del Tribunal de Primera Instancia por considerarla errónea en sus fundamentos aún cuando la misma es correcta en derecho.

> Erró el Tribunal de Apelaciones al resolver que el embargo fue legal por el fundamento de que los fondos depositados en la cuenta de depósito pertenecían a ambas depositantes.

Expedimos el recurso de *certiorari* presentado y contamos con la comparecencia de ambas partes, por lo que estamos en posición de resolver y procedemos a así hacerlo.

**II**

**A**

Como indicamos inicialmente, la controversia en este caso se refiere a si un acreedor puede embargar en su totalidad una cuenta conjunta perteneciente a su deudor y a un tercero ajeno a la deuda dineraria reclamada, como medida preventiva para asegurar la efectividad de una sentencia, o

en su defecto, qué proporción del dinero depositado puede ser embargado.

La Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56, provee los mecanismos y procedimientos que tiene a su alcance un demandante para asegurarse que pueda recobrar el dictamen que recaiga a su favor en el futuro o la sentencia ya emitida.[5] Así pues, "[e]n todo pleito antes o después de [dictar] sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia." Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56.1. Entre las medidas cautelares que puede ordenar el juzgador de hechos, según las circunstancias particulares del caso, se encuentran: el embargo, **el embargo de fondos en posesión de un tercero**, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o cualquier otra medida que estime apropiada. *Íbid*.

La Regla 56.1 le concede amplia discreción al tribunal para conceder o denegar el remedio solicitado, con la única limitación de que la medida sea razonable y adecuada al propósito esencial de garantizar la efectividad de la sentencia que recaiga en su día. *F.D. Rich Co. v. Tribunal Superior*, 99 D.P.R. 158, 176 (1970). Precisamente, en virtud

---

[5] Las Reglas 56.2 a 56.4 de Procedimiento Civil regulan el procedimiento de embargo en cuanto a notificación, fianza, anotación en el Registro de la Propiedad o depósito de bienes muebles. Véase *Rivera Rodríguez & Co. v. Stowell*, 133 D.P.R. 881 (1993).

de lo dispuesto en el Regla 56 el BBV procedió a embargar la cuenta de ahorros aquí en controversia. Y, habida cuenta de que el foro primario al dictar sentencia nunca dispuso de la controversia relativa a la titularidad de la cuenta, previo a la ejecución de la sentencia dictada, el BBV correctamente replanteó el asunto ante el foro primario. Ésta es la controversia que está ante nuestra consideración hoy.

### B

En lo que respecta al embargo de fondos en posesión de un tercero, precisa señalar que reconocimos la vitalidad de este mecanismo hace ya varias décadas.[6] En *Prado Martorell v. Quiñones*, 78 D.P.R. 313, 319 (1955), se embargaron tres cuentas bancarias pertenecientes a tres de los codemandados, quienes eran todos deudores solidarios del demandante. Los codemandados impugnaron, entre otras cosas, la validez del embargo realizado. Resolvimos que el dinero retenido en instituciones bancarias estaba sujeto a embargo. Al así resolver indicamos que, "[a]un cuando . . . se embargaron bienes muebles en manos de una tercera persona, nada hay en la ley que impida tal embargo, ni que distinga entre la forma de llevarse a cabo el embargo de bienes que están en manos del demandado y el de bienes que están en manos de terceras personas." 78 D.P.R., pág. 319.

---

[6] La Ley para Asegurar la Efectividad de la Sentencia de 1902, en su artículo 10, proveía como remedio provisional únicamente el embargo, sin referirse específicamente a cuando el bien a ser embargado está en posesión de un tercero. Véase *Prado Martorell v. Quiñones*, 78 D.P.R. 313, 319 (1955).

Aun cuando hemos reconocido la procedencia del embargo de bienes en posesión de tercero,[7] solo en *Prado* atendimos esta controversia y lo hicimos desde la perspectiva del embargo de una cuenta bancaria. En ese caso, sin embargo, no analizamos detenidamente la naturaleza de esta acción y cómo opera la misma en atención a los intereses afectados, pues *Prado* no versaba sobre un embargo de cuentas conjuntas donde una de las partes no era deudor del acreedor. Por otro lado, cabe señalar la Asamblea Legislativa no ha dispuesto legislación especial alguna para regular este procedimiento.

Veamos entonces como este asunto ha sido atendido en otras jurisdicciones.

### C

El embargo de fondos en posesión de un tercero se utiliza cuando un acreedor quiere obligar a un tercero, quien tiene en su poder fondos pertenecientes a su deudor, a su entrega o depósito en el tribunal para así satisfacer la deuda existente. *Prado v. Quiñónez, supra*. Véase, S. Mordansterm, *Legal protection in garnishment and attachment*, Oceana Publications, New York, 1971, pág. 2. En estos casos, no existe relación alguna entre el acreedor reclamante y el tercero, pero se da una especie de "subrogación" para que el acreedor pueda requerir del tercero el dinero del deudor.

---

[7] Véase *F.D. Rich Co. v. Tribunal Superior*, 99 D.P.R. 158 (1970); *E.L.A. v. Tribunal Superior*, 98 D.P.R. 524 (1970); Banco Popular v. Vázquez, 97 D.P.R. 160 (1969); *Barnés v. Comercial Insurance of Newark*, 83 D.P.R. 324 (1961); *Prado Martorell v. Quiñones*, 78 D.P.R. 313 (1955); *Sierra v. Vieta*, 56 D.P.R. 224 (1940).

El ejemplo por excelencia de propiedad sujeta a este tipo de medida preventiva es el embargo de cuentas bancarias, donde el "titular" de los fondos es el depositante-deudor, mientras el banco es el tercero que retiene en depósito el dinero del deudor y cuya entrega solicita el acreedor-reclamante. Morgansterm, *op. cit.*, pág. 49.

A poco que analicemos este tema nos percatamos que la ley que regula las instituciones bancarias en Puerto Rico no define la naturaleza de la relación entre banco y depositante, y se limita a establecer la reglamentación del aspecto jurídico administrativo de los bancos, sus requisitos orgánicos y las normas de interés por las que ha de regirse. La ley deja fuera de su ámbito el régimen de contratos y sus relaciones privadas. Véase, 7 L.P.R.A. secs. 1 *et seq*.

En *Portilla v. Banco Popular*, 75 D.P.R. 100 (1953), señalamos, no empece, que el establecimiento de una cuenta corriente queda enmarcado dentro de la figura del contrato de préstamo y no de depósito, "ya que el banco depositario, además de su obligación de guardar y restituir el dinero depositado, o su valor, tiene la facultad de servirse o de usar la cosa depositada." 100 D.P.R., pág. 113.[8] Véase, *Tesorero de P.R. v. Banco*, 46 D.P.R. 308 (1934).

Puntualizamos en *Portilla*, que el depositante pierde la propiedad de las sumas depositadas, pues no existe --como

---

[8] Garrigues señala en su tratado de Derecho Mercantil que "[l]a distinción entre préstamo y depósito irregular bancarios no es clara y constituye uno de los más antiguos y discutidos problemas de la doctrina tradicional." J. Garrigues, *Curso de Derecho Mercantil*, Ed. Temis, Bogotá, 7ma. ed., Tomo IV, 1987, pág. 183.

sería en el caso de un contrato de depósito—- el derecho a reivindicar el objeto depositado, "sino solamente un derecho de crédito contra el depositario." *Portilla, supra*, pág. 113. Recordemos que el depositante le entrega al banco un bien fungible y el banco entonces "adquiere la obligación de restituir otro tanto de la misma especie y calidad." J. Garrigues, *Curso de Derecho Mercantil*, Ed. Temis, Bogotá, 7ma. ed., Tomo IV, 1987, pág. 183.

Esta norma guarda estrecha similitud con la regla prevaleciente en Estados Unidos donde se entiende que la relación existente entre un banco y su cliente, el depositante, es la de un "deudor-acreedor". El cliente no se considera el "dueño" del dinero depositado, sino que meramente tiene una reclamación frente a su banco respecto la suma depositada. B. Clark, B. Clark, *The Law of Bank Deposits, Collections and Credit Cards*, Warren, Gorham & Lamont, Massachusetts, 1995, par. 21.01, pág. 21-1. ("The customer does not 'own' the money on deposit; it merely has a claim against the depository institution.") Esa "reclamación" es la que está sujeta a embargo, de la misma forma que lo están las cuentas por cobrar, o los salarios no devengados de un empleado. *Íbid*.

**D**

Aun cuando en el Derecho bancario no se considera que los depositantes sean los "propietarios" del dinero depositado, en la mayoría de las jurisdicciones en los Estados Unidos, los tribunales permiten el embargo de dichos

fondos hasta el monto del interés del deudor en los mismos. Clark, Clark, *op. cit.*, par. 21.05, pág. 21-5. Ello, a base del principio del derecho anglosajón conocido como "equitable ownership."[9] Para determinar cuál es el monto embargable, se requiere la presentación de aquella evidencia que permita establecer qué parte del dinero depositado le pertenece a cada depositante.[10] *Delta Fertilizer, Inc. v. Morgan*, 547 So. 2d 800, 802 (Miss. 1989)("In the majority of jurisdictions, the entire account is vulnerable [to garnishment], but evidence is permitted to show the respective ownership of each depositor."); *Amarlite Architectural Products, Inc. v. Copeland Glass Company*, 601 So.2d 414, 416 (1992); *Baker v. Baker*, 710 P.2d 129, 132-33 (Okla. Civ. App. 1985). En tal sentido, se estima que existe una presunción rebatible de que el dinero depositado en la cuenta le pertenece indistintamente a los co-dueños de la

---

[9] Por "equitable ownership" se entiende lo siguiente: "The ownership interest of one who has equitable as contrasted with legal ownership of property . . . Ownership rights which are protected in equity." Black's Law Dictionary, West Publishing, Minnesota, 1979, 5th. ed., págs.483-484.

[10] Existe una minoría de jurisdicciones de los estados de Estados Unidos, que sostienen que la cantidad total depositada en una cuenta bancaria conjunta puede ser embargada si está en manos de un tercero por un acreedor que obtuvo una sentencia en contra de uno de los depositantes, **sin derecho a presentar prueba de que el dinero embargado no pertenece al deudor por sentencia**. *Fleet Bank Connecticut v. Carrillo*, 691 A.2d 1068 (Conn. 1997); *Park Enterprises, Inc. v. Trach*, 47 N.W.2d (Minn. 1951).

Otros estados han adoptado una norma que establece una presunción rebatible a los efectos de que **cada depositante en una cuenta bancaria conjunta es dueño de la mitad del dinero depositado** y sólo puede ser embargado esa porción en ausencia de prueba del acreedor de que el deudor posee un interés mayor. *Danielson v. Lazoski*, 531 N.W.2d 799 (Mich. App. 1995); *Miller v. Clayco State Bank*, 708 P.2d 997 (Kan. App. 1985).

cuenta por lo que procede su embargo, sujeto claro está, a que se establezca lo contrario.

El peso de probar que los fondos depositados en la cuenta embargada, en parte o en todo, no pertenecen al deudor recae sobre cada uno de los depositantes. Ello tiene que ser así pues son éstos quienes están en mejor posición para establecer la titularidad de los fondos que pertenecen a cada cual y en qué proporción.[11] *Yakima Adjustment Service, Inc. v. Durand*, 622 P.2d 408, 411 (Wash. App. 1981); *Hayden v. Garner*, 381 S.W.2d 752, 754 (1964)("It is our view that under the facts in this case the court should have held all of the joint bank account was *prima facie* subject to garnishment, and that the burden was on each joint depositor to show what portion of the funds he or she actually owned. We believe this is the fair and reasonable rule because the depositors are in a much better position than the judgment creditor to know the pertinent facts."); *Amarlite Architectural Products, Inc. v. Copeland Glass Company*, 601 So.2d, pág. 416 ("[w]e consider this to be the most equitable solution, because it is much easier for the depositors than the creditor to have or obtain proof of the ownership of the commingled funds."); *Leaf v. McGowan*, 141 N.E.2d 67, 71 (Ill. App. 1957).

Una vez se establece por preponderancia de la prueba, qué porción del dinero depositado, si alguna, le pertenece

---

[11] En algunas jurisdicciones en Estados Unidos se dispone que el peso de demostrar que el deudor es el dueño de la totalidad, o de una parte, de los fondos depositados recae sobre el embargante. B. Clark, B. Clark, *The Law of Bank Deposits, Collections and Credit Cards*, Warren, Gorham & Lamont, Massachusetts, 1995, par. 21.05, pág. 21-6.

al deudor, el embargo procede contra esa cantidad, sin más. *Traders Travel Int'l, Inc. v. Howser*, 753 P.2d 244, 248 (Haw. 1988). Véase, Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditors of One Joint Depositor, 86 *ALR 5th.* 527 (2001).

Veamos someramente algunos ejemplos. En *Delta Fertilizer, Inc. v. Morgan*, *supra*, el acreedor aseguró una sentencia en contra del deudor mediante el secuestro de varias cuentas bancarias conjuntas a nombre del deudor y su madre. Ambos depositantes testificaron en la vista que la totalidad de los fondos en las cuentas embargadas pertenecían únicamente a la madre, una viuda que había perdido su visión. Se señaló que los nombres de sus hijos aparecían en sus cuentas bancarias por conveniencia, ya que ella dependía de ellos para realizar sus pagos. La Corte Suprema de Mississippi, sostuvo que ante la prueba vertida en corte se estableció que la titularidad de los fondos depositados en la cuenta conjunta le pertenecían a la madre y que el deudor no tenía ninguna clase de interés sobre el dinero depositado, por lo que no procedía el embargo.

Nos parece particularmente persuasivo lo dispuesto en *Baker v. Baker*, *supra*. En *Baker* se sostuvo, nuevamente, que cada depositante en una cuenta conjunta se presume "dueño" de la totalidad del dinero depositado en la misma. Esta presunción se indicó, era de carácter rebatible no empece la existencia de un acuerdo entre el banco y los depositantes, donde se disponía que los fondos le pertenecían en su

totalidad a los co-dueños. Esta presunción podía ser rebatida mediante prueba oral o extrínseca ("parol evidence") y el peso de la prueba recaía sobre los titulares de la cuenta conjunta. Al respecto, el tribunal expresó:

> [W]e find that a rebbutable presumption exists that the debtor who holds an interest in a joint account is entitled to use the entire account. Once it is presumed that the debtor, as a joint tenant, is entitled to the entire account, the burden is placed on the debtor or intervener to prove otherwise. Such a result is the most equitable in light of the fact that the joint tenants are in effect contradicting the terms of their joint account agreement. Although joint owners may assume the risk that their cotenants will pay creditors voluntarily when they establish a joint account, these same joint owners may later seek to establish factual ownership different to the declared purpose of the account.

710 P.2d, pág. 134. Véase además, *Traders Travel International, Inc. v. Howser*, supra, a la pág. 248 ("We now adopt the majority view that the debtor presumptively holds the entire joint bank account but may disapprove this supposition to establish his or her actual equitable interest.")

A la luz de lo anterior, extraemos los siguientes principios, los cuales gozan del aval mayoritario de las jurisdicciones que han atendido controversias como las de autos, y que hoy adoptamos:

Un acreedor puede embargar una cuenta bancaria que aparezca a nombre de su deudor y un tercero pues existe una presunción de que los fondos depositados le pertenecen en su totalidad a los titulares de la cuenta conjunta. Abona a esta presunción los términos del acuerdo que, de ordinario,

suscriben entre sí la institución bancaria y los depositantes.

Cabe señalar, que los contratos de cuenta corriente o cuenta de ahorros suscritos entre una institución bancaria y un cliente, habitualmente, constituyen formularios pre impresos que no le permiten, verdaderamente, al depositante negociar sus términos, ni el producto adquirido. Por lo que no parece justo ni razonable que lo dispuesto en este acuerdo se convierta en una verdad inexpugnable frente a terceros en perjuicio de uno de los co-dueños de la cuenta conjunta.[12] De ahí que resolvamos que sólo **se presume** que el dinero así depositado le pertenecen a ambos indistintamente; presunción que podrá ser rebatida.

Esta presunción rebatible puede ser impugnada por cualquier parte que se vea afectada por la misma. Quien pretenda cuestionarla tendrá el peso de la prueba de demostrar lo contrario. La presunción puede ser rebatida con aquella evidencia testifical o documental que, a juicio del juzgador de los hechos, sea suficiente para establecer a quién pertenecen los fondos y en qué proporción o cantidad. A tales efectos se podrá considerar, entre otros, los términos del contrato con la institución financiera, la intención de las partes al establecer la cuenta, el control

---

[12] Nos parecen acertadas las siguientes expresiones en *Baker v. Baker*, 710 P.2d 129, 133 (Ok. 1985): "Banking institutions offer limited choices of ownership to customers. The customer is most generally presented with a choice of accounts fashioned by the financial institution and designed to protect its own interests rather than define the rights and actual ownership of depositors."

que ejerce el deudor sobre la cuenta conjunta, los estados de cuenta que permitan trazar el origen del dinero y su movimiento, el propósito para el cual fue creada la cuenta conjunta, el conocimiento que tenga el deudor sobre los movimientos realizados en la cuenta, a nombre de quién aparecen los cheques, quién está autorizado a firmarlos, y cualquier otra evidencia que el tribunal estime necesaria y apropiada.

El acreedor entonces sólo podrá repetir contra aquella porción del dinero depositado que se determine pertenezca a su deudor. El sobrante no podrá estar sujeto a embargo. Para salvaguardar los derechos del co-firmante no deudor, el tribunal de instancia, una vez se solicite y se cuestione el embargo de la cuenta conjunta, deberá celebrar una vista para dilucidar la tenencia del dinero, a la mayor brevedad posible.

Somos del criterio que la norma que adoptamos es la que mejor se ajusta a nuestro ordenamiento jurídico y salvaguarda los intereses de todas las partes involucradas. Por un lado, cónsono con la flexibilidad que provee nuestro ordenamiento en materia de remedios provisionales, se le permite al acreedor *prima facie* embargar la cuenta conjunta para asegurar la sentencia que en su día recaiga. Cerciorándonos así de que podrá satisfacer su acreencia. Por otro lado, no penalizamos a un tercero inocente quien puede, ni siquiera, conocer de la deuda del co-firmante en su cuenta bancaria, por los incumplimientos de éste.

A la luz de lo dispuesto, veamos los hechos del caso.

## III

En el presente caso, el acreedor BBV embargó una cuenta de ahorros que poseía conjuntamente su deudora Carmen Sasso Oliver, junto a su madre Concepción Oliver Aneiro,[13] para satisfacer una sentencia. En el contrato suscrito entre el Banco Popular y las depositantes al abrir la cuenta número 515-045442 se dispuso, en lo pertinente, lo siguiente:

> **Cada depositante será acreedor solidario con derecho individual para depositar y retirar fondos de la Cuenta.** Por tal razón, cada uno autoriza al otro a endosar libramientos y otros documentos que evidencian obligaciones de pago contra la Cuenta y cada Depositante autoriza al otro a firmar retiros de fondos contra la Cuenta.

> **Los fondos depositados son propiedad de ambos Depositantes, quienes se convierten en acreedores solidarios del Banco.** El banco podrá responder por dichos fondos a cualquiera de los dos. (Énfasis nuestro.)

La parte recurrida en su alegato, reconoce la existencia de una presunción a favor del embargo de una cuenta conjunta donde sólo uno de los "co-dueños" era su deudor, según se desprende del acuerdo antes transcrito. Sostiene que le correspondía a la peticionaria probar lo contrario, lo que indica no hizo. En vista de ello, entiende correcta la determinación del Tribunal de Apelaciones, por lo que procedía el embargo de la totalidad de los fondos depositados en la cuenta y su eventual ejecución.

---

[13] Es menester aclarar que no estamos resolviendo lo que procedería si la cuenta embargada pertenece conjuntamente a un matrimonio bajo el régimen de sociedad legal de gananciales, al cual le son aplicables las disposiciones de nuestro Código Civil.

Los peticionarios, en su alegato ante este Tribunal reconocen, contrario a lo resuelto por el foro de instancia, que el embargo se trabó luego de que la señora Sasso Oliver fue añadida como co-depositante en la cuenta de ahorros. No obstante, aducen que la inclusión de la señora Sasso Oliver como firmante de la cuenta bancaria tuvo el propósito de asistir a su madre en el retiro de fondos en la eventualidad de una emergencia de salud, por lo que el dinero depositado era de la exclusiva titularidad de la señora Oliver Aneiro. Véase recurso de *certiorari*, pág. 10.[14]

Es de notar que tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones estimaron concluyente para la determinación que tomaron, a nombre de quién aparecía registrada la cuenta de ahorros cuando se trabó el embargo. A tales efectos, el foro sentenciador concluyó, que el dinero embargado fue depositado en la cuenta **antes** que se incluyera a la co-depositante Sasso Oliver, por lo que declaró que el embargo era improcedente. El tribunal apelativo intermedio modificó tal determinación puesto que corroboró que al momento de concretarse el embargo de la cuenta de ahorros, tanto madre como hija aparecían como co-dueñas. Para el foro apelativo intermedio ese hecho era suficiente para adjudicar la totalidad de los fondos a ambas indistintamente y así poder determinar que procedía el embargo del dinero depositado. Para ambos foros lo determinante era quiénes

---

[14] Así también se alegó en la querella instada por la interventora ante el Comisionado de Instituciones Financieras. *Íbid*, a la pág. 98-99.

eran las co-firmantes en la cuenta conjunta al momento de trabarse el embargo. Sin decirlo, para ambos foros ese hecho establecía una **presunción no refutable** sobre la procedencia del embargo.

Como hemos visto, el hecho de quién aparece como co-firmante sólo establece una presunción sobre la titularidad de los fondos, la cual puede ser rebatida. Aun cuando en este caso se celebró una vista evidenciaria ante el foro de instancia para atender esta precisa controversia, las determinaciones de hecho recogidas en la sentencia de ese tribunal son por demás parcas y escuetas y no nos permiten hacer una determinación en tal sentido, bien para confirmar o revocar al foro apelativo. En este caso, aun cuando los hijos de la señora Oliver Aneiro testificaron en la vista celebrada, el foro primario no hizo determinación de hecho alguna respecto a ese testimonio y en qué consistió por lo cual no estamos en posición de resolver si la presunción fue rebatida o no. Ciertamente, el foro primario no indicó ni una cosa ni la otra.

En atención a lo antes expresado, procede revocar la sentencia dictada por el Tribunal de Apelaciones y devolver el caso al Tribunal de Primera Instancia para que determine, conforme los parámetros establecidos en esta Opinión, a quién pertenecían los fondos depositados en la cuenta de ahorros embargada, y en qué proporción. Es decir, determine si se logró derrotar la presunción. Si el foro primario entendiese que es necesario aportar alguna prueba adicional para hacer

sus determinaciones de hecho, así podrá solicitarlo de las partes.

## IV

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se revoca la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que proceda conforme lo aquí resuelto.

Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Bilbao Vizcaya

    Recurrido

      v.

Ángel R. López Montes;        CC-2005-573
Carmen Sasso Oliver, por sí
y en representación de la
Sociedad Legal de Gananciales
compuesta por ambos; Benedict
School, Inc.

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 25 de agosto de 2006

    Por los fundamentos expresados en la Opinión que antecede los cuales se incorporan íntegramente a la presente, se revoca la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme lo aquí resuelto.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión de Conformidad y Disidente.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Bilbao Vizcaya

     Recurrido

       vs.                       CC-2005-573
Certiorari

Ángel R. López Montes,
Etc.

     Peticionarios

Opinión de Conformidad en parte y Disidente en parte emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.

San Juan, Puerto Rico, a 25 de agosto de 2006.

Estoy conforme con lo dispuesto concretamente por la mayoría del Tribunal en el caso de autos de que éste se devuelva al foro de instancia para que allí se dilucide, en una vista evidenciaria, a quién pertenecen específicamente los fondos depositados en la cuenta de ahorros embargada que aquí nos concierne.

También estoy conforme con la norma medular que se establece en este caso de que un acreedor, en aseguramiento de una posible sentencia a su favor, puede embargar una cuenta bancaria conjunta, perteneciente a su deudor y a un tercero, hasta el monto del interés que tenga el deudor en dicha cuenta.

Con lo que no estoy de acuerdo es con la norma subsidiaria que decreta la mayoría del Tribunal en este caso de que el peso de probar cuánto de los fondos depositados en la referida cuenta bancaria pertenece al deudor, **recae sobre los depositantes titulares de la cuenta en cuestión.**

La mayoría reconoce en su opinión que en algunas jurisdicciones en Estados Unidos, de donde se toma la normativa adoptada en este caso, se ha dispuesto que el peso de probar cuánto de los fondos en la cuenta bancaria pertenece al deudor, **recae sobre el embargante**. Sin embargo, la mayoría del Tribunal no acoge esta postura y opta más bien porque sean los depositarios titulares de la cuenta los que tengan el peso de probar lo que les pertenece a cada uno de ellos. La mayoría justifica su opción señalando que dichos depositarios son quienes están en mejor posición para establecer cuánto de dicha cuenta bancaria le pertenece a cada cual.

La postura referida de la mayoría del Tribunal parece razonable, y lo sería si lo que estuviésemos pautando fuese un esquema jurídico favorable a acreedores embargantes. **Pero obviamente tal no es nuestra función.**

La referida postura de la mayoría sobre quién debe probar la titularidad de los fondos tiene la dificultad, para comenzar, que necesariamente involucra en el asunto a una parte que nada tiene que ver con la relación contractual entre el acreedor y el deudor disputante. Se pretende obligar

a inmiscuirse en la disputa a un **tercero** que no le debe nada a ninguna de las partes, lo que para mí es improcedente.

Más aún, la imposición al deudor del deber de establecer cuánto le pertenece de los fondos de la cuenta bancaria embargada por el acreedor es contraria al régimen procesal que impera en nuestro ordenamiento jurídico conforme al cual **la obligación de presentar evidencia sobre los elementos esenciales de una reclamación le corresponde al reclamante.** Véase, Regla 10(B) de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV R.10. Véase, además, Colón Muñoz v. Lotería de Puerto Rico, res. el 20 de abril de 2006, 167 D.P.R. ___, 2006 TSPR 65, 2006 JTS 74; Asoc. Auténtica Empl. v. Municipio de Bayamón, 111 D.P.R. 527, 531 (1981); y Chiesa, *Tratado de Derecho Probatorio*, Tomo II, Ed. Corripio, págs. 1094-1095 (1998). En casos como el de autos, un reclamante interesa cobrar una deuda de un supuesto deudor y asegurar su reclamación mediante el embargo de unos fondos de éste. En correcto orden procesal, **le corresponde al reclamante precisar los fondos a embargarse.** No puede pretenderse que se obligue al deudor a identificar para el reclamante los fondos que éste interesa embargar.

La Regla 56.1 de las de Procedimiento Civil de Puerto Rico, que establece los principios generales relativos a asegurar la efectividad de una sentencia, es la fuente directa que autoriza el embargo de fondos como los del caso de autos. Dicha Regla exige que remedios como el del embargo en cuestión, respondan siempre a los requerimientos de **"la**

**justicia sustancial"**, 32 L.P.R.A. Ap. III, R. 56.1. Para mí es claro que esa alta exigencia se atiende en casos como el de autos fijándole al embargante la responsabilidad de identificar concretamente los fondos en cuentas bancarias que interesa embargar, como se hizo en Esposito v. Palovick, 101 A2d 568 (1953) y en Winchell v. Clayton, 43 A2d 267 (1945).

Como la mayoría del Tribunal opta por otro curso de acción en cuanto a la cuestión discutida antes, que para mí no es imparcial u objetivo, yo DISIENTO.


                                    JAIME B. FUSTER BERLINERI
                                    JUEZ ASOCIADO