Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| MUNICIPIO DE MAUNABO | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao |
|---|---|---|
| Recurrido | | |
| v. | KLCE202400064 | |
| | | Caso Núm. MB2018CV00043 |
| COBRA ACQUISITIONS, LLC. | | |
| Peticionario | | Sobre: Ley 81 de 30 de agosto de 1991; Pago Arbitrios de Construcción y Patentes Municipales |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 15 de febrero de 2024.

## I.

El 17 de enero de 2024, Cobra Acquisitions, LLC (Cobra o la parte peticionaria) presentó una *Petición de Certiorari* en la que solicitó que revoquemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI o foro primario) el 18 de diciembre de 2023, notificada y archivada en autos ese mismo día.[2] Mediante el dictamen, el TPI concedió un embargo preventivo, bajo la Regla 56.1 de Procedimiento Civil, 34 LPRA Ap. V, R. 56.1, en el que ordenó a la Autoridad de Energía Eléctrica (AEE) retener y detener cualquier pago a Cobra por la cantidad de $9,020,254.57 hasta que no se resolviera la *Demanda* que promueve

---

[1] Véase Orden Administrativa OATA-2024-013, del 18 de enero de 2024.
[2] Apéndice de la *Petición de Certiorari*, Anejo J, págs. 126-127.

el Municipio de Maunabo (Municipio de Maunabo o parte recurrida) en contra de la parte peticionaria en reclamo del pago de arbitrios de construcción y patentes municipales.

El 18 de enero de 2024, Cobra radicó una *Urgente solicitud en auxilio de jurisdicción* en la que solicitó que paralizáramos los efectos de la orden de embargo hasta que se resolviera la *Petición de Certiorari* en sus méritos. Asimismo, presentó una *Moción informativa sobre notificación de recurso de certiorari* en la que informó que notificó el recurso a las partes.

Ese mismo día, emitimos una *Resolución* en la que le concedimos al Municipio de Maunabo hasta el 19 de enero de 2024, en o antes de las 2:30 p.m., para exponer su posición respecto a la *Urgente solicitud en auxilio de jurisdicción*. También, le concedimos un término de diez (10) días, contados a partir de la notificación de dicho dictamen, para exponer su posición sobre los méritos del recurso de *certiorari*.

El 19 de enero de 2024, el Municipio de Maunabo radicó una *Moción en oposición al auxilio de jurisdicción* en la que solicitó que declaráramos Sin Lugar la solicitud en auxilio de jurisdicción.

Ese mismo día, emitimos una *Resolución* en la que declaramos No Ha Lugar la *Urgente solicitud en auxilio de jurisdicción*.

El 22 de enero de 2024, Cobra presentó una *Moción de reconsideración y reiterando urgente solicitud en auxilio de jurisdicción* en la que insistió en que reconsideráramos la denegatoria de la petición de auxilio de jurisdicción.

El 24 de enero de 2024, emitimos una *Resolución* en la que declaramos No Ha Lugar la reconsideración, en esa etapa de los procedimientos.

El 31 de enero de 2024, Cobra radicó una *Solicitud para que se entienda sometido recurso sin oposición de la parte recurrida* en la que solicitó que diéramos por perfeccionado el recurso porque el

Municipio de Maunabo no había comparecido para exponer su posición dentro del término concedido.

El 1 de febrero de 2024, el Municipio de Maunabo presentó una *Moción en solicitud de prórroga o término final* en la que solicitó un término final de ocho (8) días para expresar su posición respecto a los méritos del recurso. Según adujo, su incomparecencia se debió a inadvertencia en percatarse del término concedido originalmente en nuestra *Resolución* del 18 de enero de 2024.

El 2 de febrero de 2024, Cobra radicó una *Oposición a solicitud de prórroga* en la que solicitó que denegáramos la concesión de tiempo adicional a la parte recurrida.

Ese mismo día, emitimos una *Resolución* en la que, en vista del tiempo transcurrido y del incumplimiento con nuestra orden inicial, le concedimos al Municipio de Maunabo una prórroga final de tres (3) días, contados a partir de la notificación de dicho dictamen, para cumplir con lo ordenado.

El 5 de febrero de 2024, el Municipio de Maunabo presentó un *Alegato del Municipio de Maunabo* en el que solicitó que deneguemos la expedición del *certiorari* solicitado.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso de epígrafe y, en adelante, pormenorizamos los hechos procesales atinentes a la *Petición de Certiorari*.

## II.

El caso de marras tiene su génesis el 14 de noviembre de 2018 cuando el Municipio de Maunabo presentó una *Demanda* contra Cobra y la AEE en reclamo del pago de arbitrios de construcción y patentes municipales.[3]

---

[3] Íd., Anejo A, págs. 1-7.

Luego de múltiples trámites procesales, el 9 de julio de 2019, el TPI dictó una *Sentencia* en la que desestimó la *Demanda* por falta de jurisdicción y falta de parte indispensable.[4] Oportunamente, el Municipio de Maunabo apeló la determinación, asignándosele al recurso el alfanumérico KLAN202000146.

El 28 de abril de 2020, esta Curia dictó *Sentencia* en la que se modificó el dictamen del foro primario, a los efectos de revocar la determinación de falta de parte indispensable y de dejar sin efecto la desestimación en cuanto a Cobra. En lo pertinente, se concluyó: (1) que Cobra no estaba exento del pago de arbitrios de construcción; y (2) que correspondía que el foro primario determinara si a Cobra le correspondía pagar las patentes municipales según el requisito de "presencia física".

Devuelto el caso al foro primario y después de varios trámites procesales, las partes radicaron sendas mociones en solicitud de sentencia sumaria.[5] En atención a ello, el 14 de noviembre de 2022, el TPI dictó una *Sentencia* sumaria en la que ordenó a Cobra pagar $8,489,651.36 en concepto de contribución por arbitrios de construcción y $530,603.21 en concepto de contribución en patentes municipales a favor del Municipio de Maunabo.[6]

Inconforme con esa última determinación, el 9 de enero de 2023, Cobra presentó una *Apelación* en la que solicitó la revocación del dictamen, basándose en que la determinación de esta Curia en el KLAN202000146 sobre el pago de arbitrios de construcción era *obiter dictum* y, por ello, no establecía precedente sobre la resolución final del caso. Al recurso se le asignó el alfanumérico KLAN202300022.

---

[4] Notificada y archivada en autos el 10 de julio de 2019. Entrada Núm. 36 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[5] Apéndice de la *Petición de Certiorari*, Anejos F y G, págs. 49-73 y 74-102.

[6] Notificada y archivada en autos el 15 de noviembre de 2023. Íd., Anejo H, págs. 103-116.

El 17 de marzo de 2023, emitimos una *Sentencia* en la que revocamos la determinación y devolvimos el caso al foro primario para que, en síntesis, evaluara: (1) la cantidad final adeudada por Cobra por concepto de arbitrios de construcción; y (2) si Cobra cumplía con los requisitos para la imposición del pago de patente municipal y, de cumplir, qué cantidad le correspondía pagar.[7]

Devuelto una vez más el caso al foro de origen,[8] el 15 de diciembre de 2023, el Municipio de Maunabo presentó una *Urgente moción en solicitud de orden sobre remedio provisional en aseguramiento de la efectividad de la Sentencia* en la que solicitó al TPI que emitiera una orden a la AEE de retener y no desembolsar la cantidad de $9,020,254.57 de los pagos que la corporación pública le adeuda a Cobra.[9] De una evaluación de la moción surgen dos observaciones pertinentes. En primer lugar, la parte peticionaria esbozó que, conforme a la Regla 56.1 de Procedimiento Civil, *supra*, no estaba obligada a pagar fianza, toda vez que contaba con una *Sentencia* del Tribunal de Apelaciones – la emitida en el KLAN202300022 – en la que se declaró que Cobra estaba obligada a pagar contribuciones municipales, lo cual constituía un documento público del que se desprende que la obligación era legalmente exigible. En segundo lugar, solicitó que se señalara una vista para discutir el remedio provisional en aseguramiento de sentencia solicitado. La solicitud de celebración de vista no fue concedida.

El 18 de diciembre de 2023, el TPI dictó la *Orden* recurrida en la que ordenó a la AEE retener y detener, de manera inmediata, cualquier pago a Cobra por la suma de $9,020,254.57.[10]

---

[7] Véase nuestra *Sentencia* en el KLAN202300022.
[8] El trámite procesal se reanudó a partir del 21 de agosto de 2023, fecha en que se recibió el mandato del caso, lo cual surge de las Entradas Núm. 135 y 136 del expediente digital del caso en el SUMAC.
[9] Apéndice de la *Petición de Certiorari,* Anejo I, págs. 117-125.
[10] Íd., Anejo J, pág. 127.

Ese mismo día, Cobra radicó una *Urgente solicitud para que se deje sin efecto orden de embargo preventivo* en la que solicitó que el foro primario dejara sin efecto el remedio provisional impuesto.[11] En su escrito, denunció que el embargo preventivo fue concedido en menos de veinticuatro (24) horas, sin darle la oportunidad a la parte peticionaria de expresarse, sin celebrarse vista, como lo requiere la Regla 56.2 de Procedimiento Civil, *supra*, R. 56.2, y sin prestarse fianza, según exige la Regla 56.3 de Procedimiento Civil, *supra*, R. 56.3. Asimismo, planteó que no existía una sentencia ejecutable respecto a la cuantía que Cobra le adeuda al Municipio de Maunabo, si alguna.

El 19 de diciembre de 2023, el Municipio de Maunabo presentó una *Réplica a moción para que se deje sin efecto la orden del Honorable Tribunal* en la que solicitó al foro primario que declarara Sin Lugar la moción de Cobra en oposición a la *Orden*.[12] Según adujo, dejar sin efecto el embargo preventivo le causaría daño irreparable a la parte recurrida debido a que se quedaría sin medios para ejecutar la eventual sentencia sobre la parte peticionaria, una demandada no residente y no domiciliada. Ese mismo día, la parte recurrida notificó al TPI que diligenció la *Orden* de embargo preventivo.[13]

El 20 de diciembre de 2023, el TPI emitió una *Orden* en la que, en atención a varias solicitudes de las partes de que se impusieran sanciones, invitó a las partes a dialogar y evitar los ataques entre abogados.[14] Asimismo, puntualizó que el foro primario tenía claro el alcance de la determinación previa del Tribunal de Apelaciones en el caso.

---

[11] Íd., Anejo K, págs. 128-130.
[12] Entrada Núm. 170 del expediente digital del caso en el SUMAC.
[13] Entrada Núm. 173 del expediente digital del caso en el SUMAC.
[14] Entrada Núm. 174 del expediente digital del caso en el SUMAC.

Ese mismo día, Cobra renovó[15] su petición de dejar sin efecto el embargo preventivo y reiteró[16] su solicitud al TPI de que tuviera por no puestos los escritos radicados por la representación del Municipio de Maunabo, aduciendo que no ostentaban la autoridad para presentarlos. A su vez, la parte recurrida se opuso a ambas peticiones en una *Dúplica reiterando oposición a que se deje sin efectos la orden del Honorable Tribunal.*[17]

El 21 de diciembre de 2023, el TPI emitió dos órdenes: en una, declaró No Ha Lugar la solicitud de dejar sin efecto el embargo preventivo;[18] en la otra, rechazó el planteamiento de Cobra sobre la autoridad de la representación legal del Municipio de Maunabo[19].

En desacuerdo, el 17 de enero de 2024, Cobra presentó la *Petición de Certiorari* de epígrafe y planteó los siguientes señalamientos de error:

> PRIMER SEÑALAMIENTO DE ERROR: Cometió grave error y abusó de su discreción el Tribunal de Primera Instancia al autorizar una solicitud de embargo sin observar el cumplimiento de los requisitos de la Regla 56.4 de Procedimiento Civil.

> SEGUNDO SEÑALAMIENTO DE ERROR: Cometió grave error y abusó de su discreción el Tribunal de Primera Instancia al autorizar una solicitud de embargo sin requerirle al Municipio la prestación de una fianza en clara violación al debido proceso de ley de COBRA.

El 5 de febrero de 2024, el Municipio de Maunabo radicó un *Alegato del Municipio de Maunabo* en el que solicitó que deneguemos la expedición del auto solicitado. Según esbozó, el TPI dictó la *Orden* recurrida, sin fijar fianza ni celebrar vista, porque la orden de embargo se gestionó después de dictada una sentencia final, aplicando así una de las excepciones establecidas en la Regla 56.3 de Procedimiento Civil, *supra.* Es su posición que la *Sentencia* emitida el 17 de marzo de 2023 en el KLAN202300022 constituía

---

[15] Apéndice de la *Petición de Certiorari*, Anejo N, págs. 135-137.
[16] Entrada Núm. 176 del expediente digital del caso en el SUMAC.
[17] Entrada Núm. 178 del expediente digital del caso en el SUMAC.
[18] Apéndice de la *Petición de Certiorari*, Anejo O, pág. 138.
[19] Entrada Núm. 179 del expediente digital del caso en el SUMAC.

una sentencia final y firme en la que se adjudicó que Cobra está obligado a pagarle al Municipio de Maunabo por arbitrios de construcción. Además, arguyó que procedía dictar la *Orden* sin notificación ni celebración de vista porque: (1) producto del referido dictamen, la parte recurrida posee un interés propietario sobre los fondos a embargar y (2) el caso presenta circunstancias extraordinarias, ya que Cobra es una corporación foránea sin bienes en Puerto Rico y, por ello, ante el pago de los fondos que la AEE le adeuda, se pondría en riesgo la posibilidad de recobrar lo adeudado.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1,[20] establece las instancias en las que el foro revisor posee autoridad

---

[20] Esta Regla dispone que:

[....]

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto

para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corporation, et als.,*** 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. de Caguas v. JRO Construction,*** 201 DPR 703 (2019). Nuestro rol al atender recursos de *certiorari* descansa en la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias, o de manejo del caso, y en la cautela que debemos ejercer para no interrumpir injustificadamente el curso corriente de los pleitos que se ventilan ante ese foro. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 97 (2008).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[21]

---

a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. (Énfasis nuestro).

[21] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". ***Rodríguez v. Pérez***, 161 DPR 637, 651 (2004); ***Banco Metropolitano v. Berríos***, 110 DPR 721, 725 (1981). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". ***Citibank et al. v. ACBI et al.***, 200 DPR 724, 735 (2018); ***García López y otro v. E.L.A.***, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Íd.; ***Medina Nazario v. McNeil Healthcare LLC***, supra, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". ***Hietel v. PRTC***, 182 DPR 451, 459 (2011); ***Pueblo v. Rivera Santiago***, 176 DPR 559, 580 (2009); ***Negrón v. Srio. de Justicia***, 154 DPR 79, 91 (2001); ***Bco. Popular de P.R. v. Mun. de Aguadilla***, 144 DPR 651, 658 (1997). Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". ***Citibank et al. v. ACBI et al.,*** supra, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". Íd., pág. 736.

---

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

Véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

## B.

Tanto la Constitución de Puerto Rico como la Constitución de los Estados Unidos protegen a toda persona de ser privada de su libertad o propiedad sin el debido proceso de ley. Art. II, Sec. 7, **Const. ELA**, LPRA, Tomo I; Enmiendas V y XIV, **Const. EE. UU.**, LPRA, Tomo I. Entre los principios fundamentales del debido proceso de ley, la jurisprudencia federal ha incluido el derecho a ser oído y notificado. *Rivera Rodríguez & Co. v. Stowell Taylor,* 133 DPR 881, 889 (1993). A su vez, nuestro Tribunal Supremo ha resuelto reiteradamente que los requisitos constitucionales del debido proceso de ley son aplicables a los procedimientos de embargo, independientemente de que la incautación sea temporera. Íd., pág. 890. Ello es lógico, toda vez que, cuando se utiliza este mecanismo, el alegado deudor es privado de un interés constitucional significativo de propiedad y el Estado ejerce una acción estatal sustancial que activa la aplicación de la cláusula de debido proceso de ley. Íd.

Ahora bien, procesalmente, el embargo es uno de los remedios provisionales de aseguramiento de sentencia y está regulado por la Regla 56 de Procedimiento Civil, *supra*, R. 56. El embargo se considera una interdicción jurídica en el patrimonio del deudor, cuyo efecto procesal principal es sujetar los bienes embargados al cumplimiento de la obligación o reclamación en el proceso principal. *Nieves Díaz v. González Massas,* 178 DPR 820, 840-841 (2010); *Alum Torres v. Campos del Toro,* 89 DPR 305, 321 (1963). Como medida, el embargo no tiene que recaer únicamente sobre los bienes del alegado deudor, sino que se puede extender a bienes en posesión

de un tercero. ***Cacho Perez v. Hatton Gotay,*** 195 D.P.R. 1, 13 (2016); ***Prado v. Quiñones,*** 78 DPR 313 (1955).

Al concederse el embargo, así como cualquier otro remedio en aseguramiento de sentencia, los tribunales deben prestarle atención a: (1) que el remedio sea provisional; (2) que el propósito sea asegurar la efectividad de la sentencia; y (3) los intereses de todas las partes, según lo requiera la justicia y las circunstancias. Íd.; ***Nieves Díaz v. González Massas,*** supra, pág. 839. Ello, a su vez, está codificado en la Regla 56.1 de Procedimiento Civil, *supra*, la cual establece específicamente lo siguiente:

> En todo pleito antes o después de sentencia, por moción de la parte reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia. El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial. (Énfasis nuestro).

Sobre esta Regla, debemos pormenorizar dos asuntos. En primer lugar, como sugieren las porciones enfatizadas, el foro que expide la medida provisional posee **discreción** para ordenar la medida que estime apropiada, teniendo la obligación de evaluar las circunstancias del caso, los intereses de las partes y la justicia sustancial. En segundo lugar, dada la discreción antes mencionada, la lista enumerada por esta Regla no es taxativa. ***Citibank v. ACBI,*** supra, pág. 732.

Ahora bien, la Regla 56.2 de Procedimiento Civil, *supra*, establece, como requisito, que "[n]o se concederá, modificará, anulará, ni se tomará providencia alguna sobre un remedio provisional sin notificar a la parte adversa y sin celebrar una vista, excepto según se dispone en las Reglas 56.4 y 56.5". (Énfasis nuestro).

A esto, la Regla 56.3 de Procedimiento Civil, *supra*, añade el requisito de prestar fianza al disponer que el remedio provisional únicamente podrá concederse sin la prestación de fianza cuando: (1) surja de documentos públicos o privados, según definidos por ley y firmados ante una persona autorizada para administrar juramento, que la deuda es <u>legalmente exigible</u>; (2) el litigante sea indigente o insolvente; y (3) se gestione el remedio <u>después</u> de la sentencia.

Respecto a la notificación y la vista, la Regla 56.4 de Procedimiento Civil, *supra*, Regla 56.4, establece que no se podrá expedir una orden de embargo o prohibición de enajenar <u>sin previa notificación y vista</u>, excepto cuando la parte reclamante demuestre: (1) que tiene un interés propietario sobre la cosa embargada; (2) que existen circunstancias extraordinarias; o (3) la probabilidad de prevalecer mediante prueba documental fehaciente que demuestre que la deuda es líquida, vencida y exigible. Véase también ***Rivera Rodríguez & Co. v. Stowell Taylor,*** supra. En adición, la referida Regla provee que, en caso de que se conceda una orden de esta índole sin notificación ni vista, cualquier parte afectada podrá presentar "en cualquier tiempo una moción para que [se] modifique o se anule la orden, y dicha moción se señalará para vista en la fecha más próxima posible y tendrá precedencia sobre todos los demás asuntos". Regla 56.4 de Procedimiento Civil, *supra.* Para efectos de esa vista, será suficiente notificar a la parte que obtuvo la orden mediante una notificación de dos (2) días o la notificación más corta que el tribunal prescriba. Íd.

En este contexto, nuestra jurisprudencia ha definido qué documentos constituyen "documentos fehacientes", al igual que los requisitos de liquidez y exigibilidad de una deuda. En primer lugar, una sentencia final – aquella que pone fin a una reclamación judicial y contra la cual se puede apelar – es un documento fehaciente. ***Ramos y otros v. Colón y otros,*** 153 DPR 534, 543 (2001); ***U.S.***

*Fire Ins. V. A.E.E.,* 151 DPR 962 (2000); *Feliciano Figueroa et al. v. Toste Piñero,* 134 DPR 909 (1993). En segundo lugar, una deuda es líquida cuando la cantidad debida es "cierta" y "determinada". Íd., pág. 546. Entretanto, es exigible y vencida cuando debe ser satisfecha por la naturaleza de la obligación o por requerimiento del acreedor. Véase *Guadalupe v. Rodríguez,* 70 DPR 958, 966 (1950).

**C.**

Desde la perspectiva del Tribunal de Apelaciones al considerar la revisión de medidas provisionales como el embargo, resulta imperativo considerar el concepto de discreción judicial como una cuestión de umbral.

La discreción judicial se entiende como la facultad que tiene un tribunal para resolver de una forma o de escoger entre varios cursos de acción. *Citibank v. ACBI,* supra, pág. 735. Este concepto, a su vez, está intrínsecamente atado a la razonabilidad. Íd., citando a *García v. Asociación,* 165 DPR 311, 321 (2005). Es, en esencia, "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Negrón v. Srio de Justicia,* 154 DPR 79, 91 (2001). De lo anterior se colige que la discreción aplicable al TPI en sus determinaciones discrecionales es amplia y, por ello, estas decisiones merecen gran deferencia. *Citibank v. ACBI,* supra, pág. 735. Lo anterior resulta lógico, toda vez que el foro primario es quien conoce las particularidades de cada caso, tiene contacto con las partes litigantes y conoce la prueba desfilada. Íd., pág. 736; *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 306–307 (2012).

Como norma general, el Tribunal Supremo ha reiterado que los tribunales apelativos no deben intervenir con las determinaciones discrecionales del foro primario, ni sustituir el criterio utilizado por éste en el ejercicio de su discreción, a menos que se demuestre que actuó con prejuicio o parcialidad o incurrió

en craso abuso de discreción o en error manifiesto. Íd. Los abusos de discreción pueden ocurrir cuando el juez: (1) ignora algún hecho material sin razón para ello; (2) le concede demasiado peso a un hecho inmaterial, fundamentando su decisión en ese hecho irrelevante; o (3) pese a evaluar todos los hechos del caso, realiza un análisis liviano y su determinación resulta irrazonable. Íd. Asimismo, los foros apelativos pueden intervenir cuando las decisiones discrecionales resulten arbitrarias. *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 273 (2021).

Nuestro más alto foro ha incluido los remedios provisionales entre las determinaciones discrecionales, puesto que tienen el componente intrínseco de la discreción judicial. *Engineering Service v. AEE,* 209 DPR 1012, 1021 (2022). Es decir, las decisiones del foro primario en este ámbito, como en el caso del embargo preventivo, gozan de amplia discreción y merecen gran deferencia. Íd.; *Citibank v. ACBI,* supra. Ello encuentra apoyo en la naturaleza de los remedios provisionales, una medida temporera que será concedida por el tribunal, motivado por una petición de parte, si juzga que las razones lo justifican y que podrá modificarse, ampliarse, sustituirse o dejarse sin efecto en cualquier momento. Íd., págs. 1020-1021.

Visto de este modo, por tratarse de determinaciones discrecionales, las decisiones del foro primario sobre remedios provisionales están cobijadas por los criterios de deferencia antes esbozados, los cuales obligan a los tribunales apelativos a limitar el ejercicio de su facultad revisora. *Citibank v. ACBI,* supra. Empero, como se puede ver, esta norma de limitación autoimpuesta no representa un obstáculo que impida que los tribunales apelativos revisen este tipo de determinaciones, especialmente por las consecuencias reales que pueden tener. *Engineering Service v. AEE,* supra, pág. 1022; *Umpierre Matos v. Juelle, Mejía,* 203 DPR

254, 275-276 (2019). En ese sentido, la limitación debe ceder si el juzgador comete una <u>equivocación al interpretar o aplicar cualquier norma procesal</u> o de derecho sustantivo, o si existe evidencia de prejuicio o parcialidad. Íd.; ***Umpierre Matos v. Juelle, Mejía,*** supra, págs. 275-276. También, debe ceder cuando el foro primario no se rija por un criterio de razonabilidad y adecuación, o cuando no consideren los intereses de ambas partes como lo requiera la justicia sustancial y las circunstancias de cada caso. Íd.; ***Citibank v. ACBI,*** supra. Naturalmente, estos motivos de intervención con la discreción judicial se suman a los demás criterios esbozados previamente.

## IV.

El caso de marras nos encomienda la tarea de resolver si procede una orden de embargo sin la prestación de una fianza y sin la celebración de una vista, cuando la vista fue solicitada por la propia parte que pidió el embargo y cuando la orden se gestiona después de una *Sentencia* final que adjudica la obligación de una parte de pagar, pero no la cuantía debida.

Por un lado, la posición de Cobra es que el TPI erró al dictar la *Orden* recurrida menos de veinticuatro (24) horas después de que se solicitó, sin darle la oportunidad de oponerse, sin la celebración de una vista y sin la prestación de fianza. Por el otro, la contención del Municipio de Maunabo es que la *Sentencia* dictada por esta Curia en el KLAN202300022 era una sentencia final y firme que permitía la concesión de la orden de embargo sin la prestación de fianza ni la celebración de una vista, toda vez que adjudicó que Cobra estaba obligada a pagar arbitrios de construcción a la parte recurrida. Además, arguye que, como Cobra es una corporación foránea sin bienes muebles o inmuebles en la jurisdicción, existían circunstancias extraordinarias que permitían prescindir de la celebración de la vista.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, resulta forzoso concluir que el TPI erró al dictar la *Orden* recurrida sin requerir la prestación de una fianza y sin ordenar la celebración de una vista. Según surge del expediente, no se cumplieron los requisitos para dictar una orden de embargo sin cumplir con estas obligaciones procesales y garantizar el debido proceso de ley a todas las partes.

En primer lugar, para que el TPI pueda eximir de la prestación de la fianza a la parte promovente de una solicitud de embargo se requiere que la orden sea gestionada después de una sentencia, que de algún documento juramentado se desprenda que la deuda es legalmente exigible o que se trate de un litigante indigente. Regla 56.3 de Procedimiento Civil, *supra*. Al solicitar la orden de embargo, el Municipio de Maunabo esbozó que no venía obligado a pagar fianza porque contaba con la *Sentencia* emitida el 17 de marzo de 2023 en el KLAN202300022 "en la que se declaró que Cobra tenía que pagar las contribuciones municipales, lo que constituye un documento público del que se desprende que la obligación es legalmente exigible".[22] No obstante, aunque la referida *Sentencia* reafirmó que procedía la imposición de arbitrios de construcción a Cobra, también fue enfática en que el TPI no fundamentó acertadamente la cuantía adeudada. Asimismo, concluyó que estaba en controversia si Cobra cumplía con los requisitos para la imposición del pago de patente municipal y, de cumplir, qué cantidad le correspondería pagar. Por esa razón, se <u>revocó</u> la determinación del foro primario y se <u>devolvió</u> el caso con la encomienda de que el foro primario dilucidara estas controversias mediante una vista evidenciaria.[23] A esos efectos, no existe una

---

[22] Apéndice de la *Petición de Certiorari*, Anejo I, pág. 123.
[23] Adviértase que, pese a la <u>revocación</u> de la *Sentencia* emitida por el TPI el 14 de noviembre de 2022, la *Orden* recurrida ordenó el embargo de $9,020,254.57, la suma exacta de las cuantías concedidas en la *Sentencia* del foro primario revocada

sentencia final del TPI ni del Tribunal de Apelaciones que especifique la cantidad exacta que Cobra adeuda por arbitrios de construcción, ni que adjudique que le corresponde el pago de patentes municipales. Visto así, no se cumplió con ninguna de las excepciones establecidas en la Regla 56.3 de Procedimiento Civil, *supra*, para la concesión del embargo sin la prestación de la fianza. No surge del expediente documento alguno, público o privado, ni sentencia final que establezca que la deuda es exigible. Por estos motivos, erró el TPI al emitir la *Orden* recurrida sin requerir la prestación de fianza.

En segundo lugar, para que el TPI pueda prescindir del señalamiento y la celebración de una vista al dictar una orden de embargo es necesario que la parte promovente demuestre: (1) que tiene un interés propietario sobre la cosa embargada; (2) que existen circunstancias extraordinarias; o (3) la probabilidad de prevalecer mediante prueba documental fehaciente que demuestre que la deuda es líquida, vencida y exigible. Regla 56.4 de Procedimiento Civil, *supra*. En este caso, se dictó la orden de embargo recurrida sin que se haya contado con prueba documental que demostrara que la deuda era **líquida y exigible**. Para probarlo, era necesario demostrar que la cantidad debida era **cierta y determinada**. Por el contrario, como reconoció la *Sentencia* previa de esta Curia que el Municipio de Maunabo utilizó para justificar la orden, está en controversia la cuantía debida por concepto de arbitrios de construcción y, por ello, no es cierta ni determinada. Todavía más, en el caso de la deuda por concepto de patentes municipales, aún está en controversia si procede su imposición a la parte peticionaria.

En tercer lugar, ante esta Curia, el Municipio de Maunabo argumenta que la celebración de la vista no era necesaria porque se

---

en el KLAN202300022, $8,489,651.36 por concepto de arbitrios de construcción y $530,603.21 por concepto de patente municipal.

conformaba la excepción de circunstancias extraordinarias. Según aduce, Cobra es una corporación foránea sin bienes muebles e inmuebles en esta jurisdicción y, por ello, ante el pago de los fondos por la AEE se corre el peligro de que no se pueda cobrar deuda alguna. Sin embargo, es de notar que ese planteamiento solo fue mencionado someramente en la *Urgente moción en solicitud de orden sobre remedio provisional en aseguramiento de la efectividad de la Sentencia,* la solicitud original de la orden de embargo.[24] En esa moción, pese al carácter urgente con el que se calificó la petición, el Municipio de Maunabo solicitó que el TPI señalara una vista para discutir el embargo. No obstante, inmediatamente, el foro primario dictó la *Orden* recurrida sin señalar la vista, aun cuando fue solicitada por la propia parte recurrida, promovente de la medida de aseguramiento de sentencia. Al ignorar este hecho material, incurrió en abuso de su discreción.

En cuarto lugar, la Regla 56.4 de Procedimiento Civil, *supra,* establece que, luego de concedida una orden de embargo sin celebrarse la vista, la parte afectada podrá presentar una moción para modificar o anular la orden y el TPI tendrá que señalar una vista para la fecha más cercana posible, con precedencia sobre todos los asuntos. En este caso, la *Orden* de embargo fue emitida el 18 de diciembre de 2023. Ese mismo día, Cobra radicó una solicitud para dejar sin efecto la orden de embargo. Dos días después, repitió su petición. No obstante, a pesar de lo dispuesto en la Regla 56.4 de Procedimiento Civil, *supra,* el TPI declaró No Ha Lugar la petición de Cobra. Al así proceder, erró. Aún más, surge del tracto procesal del caso que, al presente, el foro primario tampoco ha cumplido con esta obligación.

---

[24] Apéndice de la *Petición de Certiorari,* Anejo I, págs. 117-125.

A tenor con nuestra función revisora, resolvemos que el foro recurrido cometió los errores señalados. En vista de los fundamentos discutidos, corresponde concluir que el TPI cometió una equivocación al aplicar una norma procesal, lo cual justifica nuestra intervención. En definitiva, la *Orden* recurrida no procede en derecho y, por consiguiente, debe ser revocada.

**V.**

Por los fundamentos pormenorizados, se *expide* el auto de *certiorari* y se *revoca* la *Orden* recurrida. Se devuelve el caso al TPI para la continuación de los procedimientos conforme con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones